intended to be protected by congress. His honor remarked that it was difficult, many times sitting in the midst of exigencies which demand a more extended power in order to secure an efficient and protective administration of right, at first to appreciate the wisdom of decisions which seemingly without necessity limit and cramp our jurisdiction. It was only when we take into consideration a series of decisions made in a long course of years that their wisdom could be fully appreciated. They have established a principle, which experience had found to be beneficent, of leaving every assumption of jurisdiction, on the part of federal tribunals, to be expressly authorized by congress. Nothing was to be taken by implication unless it was that necessary inference without which the law could not be administered. Notwithstanding the ingenious criticism of the assignee's counsel, he did not see why Marshall v. Knox does not decide that, excepting cases where a fraud upon the bankrupt law is charged, property in custodia legis by a state court was beyond the jurisdiction of the district court. "The decision in this case," he said, "goes upon the supposition that Marshall v. Knox so hold." The doctrine, however, he thought, has no application where the pending suits are in our own tribunal, and the property in the hands of our own receiver. Here no comity is to be violated. A large mass of property worth millions, encumbered by successive and doubtful liens, some upon one portion and some upon another, with bills unnecessarily and irregularly filed, he thought, within principles entirely familiar to courts of equity, and especially to the federal tribunals a bill by the assignees setting forth the entire history of the case might be authorized by the court. He did not think it necessary in this case to resort to the doctrine of ancillary or cross-bills. He had, however, had his request answered, which was made during the argument, that he might be referred to a few cases sustaining a bill in the nature of a cross-bill, in which both new parties and new matters might be added, irrespective of any power derived under the bankrupt act. The following cases were then cited and commented upon: Brown v. Story, 2 Paige, 594; Jones v. Smith, 14 Ill. 229; Blodgett v. Hobart, 18 Vt. 414; Fletcher v. Holmes, 25 Ind. 458, 468. That the time in which this may be done is within the discretion of the court, see Story, Eq. Pl. 396.

A reading of all the judgments upon this subject, with attention to the facts involved in each, will show with entire clearness that all which is meant when it is said that new parties and new subject matter cannot be introduced into a cause by cross-bill, is that it cannot be done when they are foreign to and not necessarily connected with the matter of the original bill.

His honor, in the progress of the opinion,

23 FED. CAS.—30

indicated his intention to make an order directing future proceedings in the several foreclosure cases. Such an order, however, was not made, but subsequently an order was entered in each of the cases vacating the previous orders staying the proceedings, leaving the counsel for the assignee to take such action, in the light of his honor's opinion, as they should deem best. It is understood that an immediate application will be made by them for leave to amend their answers, and to file a cross-bill in the Sutherland case.

## Case No. 13,644.

SUTHERLAND v. STRAW et al.

[See 2 Fed. 277.]

SUTTER (UNITED STATES v.). See Case No. 16,424.]

## Case No. 13,645.

SUTTON v. The ALBATROSS.

[2 Wall. Jr. 327; 1 Am. Law Reg. 87; 1 Phila. 423; 10 Leg. Int. 10; 10 West. Law J. 197.] [1]

Circuit Court, E. D. Pennsylvania. Nov., 1852.

MARITIME LIEN—TAKING NOTE—RELEASE OF LIEN —INTENTION.

Under the Pennsylvania statute of June 13, 1836 [Laws 1835–36, p. 617], giving to mechanics a lien for work done to vessels, the lien is not necessarily discharged by the party's taking a note, and giving a receipt in full. Such receipt may be explained by showing negatively, that there was no contract or contemplation to discharge the lien; and by showing positively, by even slight facts, a different purpose which induced the transaction.

[Cited in Srodes v. The Collier, Case No. 13,272; The Dubuque, Id. 4,110.]

[Cited in Aiken v. The Fanny Barker, 40 Mo. 260; Swain v. Frazier, 35 N. J. Eq. 334.]

[See The Active, Case No. 34.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

Sutton had made repairs to the Albatross, a vessel, owned at Philadelphia by a corporation governed by directors elected from time to time. And under the statute law of Pennsylvania he had a lien on the vessel for his work. According to the usual and previous course of dealing of the company, as well with Sutton as with others, it had made its settlements every six months; but on this occasion the managers being about to resign prior to the expiration of that term, Sutton came to the president, rendering his bill up to the date of it, and requesting him to close the account previously to the change of directorship; as if that was not done, a new board might raise some dispute or difficulty, a thing which he wished to avoid. "He re-

[1] [Reported by John William Wallace, Esq. 10 Leg. Int. 10, contains only a partial report.]